IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. |
| v. | : : : | JURY TRIAL DEMAND |
| PHOEBE PUTNEY MEMORIAL HOSPITAL, INC., | : : : | |
| Defendant. | : : | |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on a disability, and to provide appropriate relief to Wendy Kelley ("Kelley"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Phoebe Putney Memorial Hospital, Inc., ("Defendant") discriminated against Kelley when it discharged her because of her disability and in retaliation for requesting a reasonable accommodation for her disability in violation of the ADA, as amended.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6 ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Georgia, Albany Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporate by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a corporation doing business in the state of Georgia and the city of Albany, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Wendy Kelley filed a Charge of Discrimination with the Commission alleging violations of the ADA by Defendant.

8. On July 14, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On July 19, 2017, Defendant advised the Commission that it did not wish to participate in the conciliation process.

10. On July 31, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since on or about April 2016, Defendant has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. §12112(a) and (b).

13. Kelley is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Kelley has a mental impairment, anxiety disorder, that substantially limits her in the operation of major bodily functions, including functions of the neurological system.

14. Defendant regarded Kelley as having a disability by terminating her employment because of an actual or perceived impairment.

15. Kelley began working for Defendant as a Medical Records Analyst in September 2015. Kelley was assigned to work Monday through Friday.

16. In early April 2016, Kelley requested Personal Medical Leave under Defendant's leave policy through her immediate supervisor from April 5, 2016,

through April 10, 2016. The Personal Medical Leave was related to her anxiety disorder. The medical leave was ultimately approved by Defendant's Corporate Director of Health Information Management.

17. On or about April 13, 2016, Kelley's health care provider recommended that Kelley increase the dosage of her prescribed anxiety medication and not work on the weekends to give herself time to adjust and recover from the increased dosage as the increased dose could cause excessive drowsiness. Kelley had not previously worked weekends during her employment with Defendant.

18. Shortly after receiving the new instructions from her doctor regarding her medication, Kelley's immediate supervisor notified Kelley and the six other Medical Records Analysts that they would need to cover the shifts for a co-worker who was scheduled to go on maternity leave sometime in June 2016. The shifts that needed to be covered included weekend shifts.

19. Kelley was asked to cover three of the co-worker's Saturday shifts over an expected three-month period.

20. After being asked to cover the Saturday shifts, Kelley informed her supervisor that, pursuant to her doctor's orders, she could not work weekends because her doctor wanted her to have two consecutive days off to adjust and recover from the increased dosage of medication she was prescribed. Kelley

submitted another Personal Medical Leave request and her doctor provided the required certification to Defendant's third-party leave administrator.

21. On or about May 3, 2016, Defendant agreed to allow Kelley to schedule two consecutive off days to manage her medication and Kelley agreed to work the requested Saturdays necessary to cover for her co-worker's anticipated absence due to maternity leave sometime in June 2016.

22. The next day, on May 4th, Kelley worked in the morning and then left for a doctor's appointment. At this appointment, her health care provider ordered that Kelley take additional leave from work through May 18, 2016, for on-going symptoms related to her anxiety disorder.

23. After the May 4th, doctor's appointment, Kelley returned to work to provide her doctor's note to Defendant's Human Resources representative and to her supervisor. Kelley also formally requested Personal Medical Leave for May 5, 2016, through May 18, 2016, through Defendant's third-party leave administrator.

24. After providing her doctor's note to Defendant, Kelley was summoned to Defendant's facility by her supervisor and Defendant's Corporate Director of Health Information Management on May 5, 2016, for a meeting to discuss "options and what [she] need[ed] to do for next steps." Kelley responded, stating that she was too weak and sick to attend the meeting, which was why her

doctor had taken her out of work.  Despite her doctor's restrictions, Kelley was ordered to attend the meeting.

25.  On May 5, 2016, Kelley arrived at Defendant's facility to attend the meeting.  Defendant's Senior Employee Relations Specialist came to get Kelley from the waiting room and as they were walking back to the meeting, Kelley suffered an anxiety attack and passed out.  Kelley injured her neck and back in the fall.  Kelley was escorted home and the meeting was not held.

26.  Rather than reschedule the meeting with Kelley, Defendant discharged Kelley on May 11, 2016.  The separation notice provided by Defendant states that Kelley was discharged for "Policy Violation – Attendance".

27.  At the time of her termination, Kelley was capable of performing the essential functions of her job despite her impairment.

28.  At the time of her termination, Kelley had no history of attendance violations and was never informed by Defendant that her termination was imminent due to attendance problems.

29.  Kelley sought a reasonable accommodation in April 2016 of being allowed two consecutive days off to adjust to the effects of the increased dosage of her anxiety medication.  Kelley again sought a reasonable accommodation of two

weeks of medical leave on May 4, 2016, to receive treatment for her anxiety disorder.

30. On or about May 5, 2016, Defendant denied Kelley's request for an additional two weeks of medical leave and terminated Kelley's employment days later, on May 11, 2016.

31. The effect of the practice(s) complained of above has been to deprive Kelley of equal employment opportunities and, otherwise, adversely affect her status as an employee because of her disability.

32. The unlawful employment practices complained of above were intentional.

33. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Kelley.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all other persons in active concert or participation with it, from terminating any employee based on an actual or perceived disability, denying them reasonable accommodations under the ADA requested due to their disability


status, and engaging in any other employment practices that discriminate on the basis of disability.

    B.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

    C.    Order Defendant to make Kelley whole by providing appropriate back pay with pre-judgment interest, in an amount to be determined at trial, and front pay and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement.

    D.    Order Defendant to make Kelley whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in an amount to be determined at trial.

    E.    Order Defendant to make Kelley whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F.  Order Defendant to pay punitive damages to Kelley for Defendant's malicious and/or reckless conduct described above, in an amount to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

    Respectfully submitted,

    JAMES L. LEE
    Acting General Counsel

    GWENDOLYN YOUNG REAMS
    Associate General Counsel

    ANTONETTE SEWELL
    Regional Attorney

    LAKISHA DUCKETT ZIMBABWE
    Supervisory Trial Attorney

    s/Steven A. Wagner
    Steven A. Wagner
    Trial Attorney
    Georgia Bar No. 000529
    steven.wagner@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
(404) 562-6818     (direct)
(404) 562-6905     (facsimile)