IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : : | CIVIL ACTION FILE NO: 1:17-CV-00201-LJA |
| v. | : : | |
| PHOEBE PUTNEY MEMORIAL HOSPITAL, INC., | : : : | |
| Defendant. | : | |

**DEFENDANT PHOEBE PUTNEY MEMORIAL HOSPITAL, INC'S
BRIEF IN SUPPORT OF
POST-TRIAL MOTION FOR COSTS AND ATTORNEYS' FEES**

Comes now Defendant Phoebe Putney Memorial Hospital, Inc. ("Phoebe"), pursuant to this Court's Judgment of November 9, 2022, Rules 11 and 54(d) of the Federal Rules of Civil Procedure ("FRCP"), and Rules 54.1, 54.2.1, and 54.2.2 of the Local Rules of the United States District Court for the Middle District of Georgia ("Local Rules"), and files this its brief in support of its Post-Trial Motion for Costs and Attorneys' Fees and shows the Court as follows.

**BACKGROUND**

Phoebe has been meeting the critical healthcare needs of the Albany-Dougherty County, Georgia metro area for 112 years. The population demographic served by Phoebe has, nationally, some of the highest rates of multiple-chronic conditions, indigent, uninsured, underinsured, Medicare, and Medicaid patients. As a result, Phoebe provides substantial care at zero or reduced reimbursement rates. In 2021 alone, Phoebe provided $38 million worth of no-cost healthcare to those unable to pay for the care rendered them. Like all hospitals, and especially those who serve

a demographic comparable to Phoebe's, healthcare labor costs are at an all-time high, and hospitals are overburdened and understaffed with respect to meeting the challenges of COVID and other epidemics and diseases. Most of those hospitals are losing money due to increased costs of operation of the facilities that have not been matched by payment increases from third-party payors, including government programs and private insurance. Phoebe needs every dollar possible to go into healthcare, and it cannot afford to have to divert funds from providing needed healthcare to defend itself against frivolous lawsuits brought by those who should be sophisticated enough to know a meritorious case from one that has no factual or legal basis. Nor should those who fail to investigate claims prior to filing a lawsuit be allowed to shift the burden of litigation expenses to the innocent party, especially when the innocent party is a non-profit hospital, like Phoebe.[1]

The Equal Employment Opportunity Commission ("EEOC") filed this lawsuit with respect to Wendy Kelley ("Kelley") for purported violations of the Americans with Disabilities Act ("ADA"). The EEOC claimed that: (1) Kelley had a qualified disability under the ADA; (2) that Kelley was on a medication for her disability that caused her to need time off from work; (3) Phoebe regarded Kelley as disabled; (4) Phoebe refused to allow Kelley a two-week leave that the EEOC alleged was related to Kelley's disability; and (5) Phoebe terminated Kelley's employment in retaliation for her having requested accommodations for her disability. However, after less than one hour of deliberations on November 2, 2022, five years and one day after the filing of the EEOC's lawsuit, a federal jury in this matter found in favor of Phoebe and

---

[1]  The EEOC claims that in its fiscal year 2020 alone it "secured $439.2 million for victims of discrimination in the private sector and state and local government workplaces through voluntary resolutions and litigation." EEOC Releases Fiscal Year 2020 Enforcement and Litigation Data, Press release 02-26-2021 (*see* Exhibit "A" attached hereto). While the EEOC rakes in hundreds of millions of dollars, Phoebe struggles to provide healthcare to the indigent.

concluded that: (1) Kelley did <u>not</u> have a disability under the ADA; (2) Kelley was <u>not</u> regarded by Phoebe as disabled; (3) Kelley's request for an accommodation was <u>not</u> made in good faith; (4) the employee(s) who made the decision to terminate Kelley's employment did <u>not</u> have actual knowledge that Kelley had a disability; (5) Phoebe's reasons for terminating Kelley's employment were <u>neither</u> false <u>nor</u> a pretext for discrimination; and (6) <u>no</u> adverse actions were taken against Kelley because of a disability. [*See* Doc. #93]

It took the federal jury less than one hour to understand what the EEOC failed to grasp, or simply refused to accept over a period of five years. The EEOC would have, or certainly should have known its lawsuit was frivolous and completely without merit had the EEOC: (1) complied with the mandates of FRCP 11, to wit: ensured that its allegations had evidentiary support; (2) performed a reasonable investigation of Kelley's claims;[2] (3) spoken with Kelley's healthcare providers prior to filing suit; (4) obtained and reviewed Kelley's medical records prior to filing the lawsuit; and (5) obtained and reviewed Kelley's pharmacy records prior to filing the lawsuit. Had the EEOC performed the above actions, it would have known that: Kelley's anxiety did not cause a substantial impairment of any major life function; she had not purchased in the six-month period preceding her termination the medication she claimed made her too drowsy to work weekends; there was no evidence linking Kelley's request for a two-week leave to either her anxiety or to any medication; she had taken an unapproved leave that was not related to her anxiety; Kelley had voluntarily abandoned her job; Kelley had refused to appeal any adverse employment decisions through Phoebe's internal appeals process, choosing instead to file a

---

[2]    A reasonable investigation was especially important here, because Kelley's Intake Questionnaire [*see* Exhibit "B" attached hereto], submitted under penalty of perjury, declared her belief that her race was the primary factor in the termination of her employment, and that age also played a factor, with her alleged disability being only an add-on to her contentions.

Charge of Discrimination with the EEOC without giving Phoebe any opportunity to address her concerns.

## LAW APPLICABLE TO REQUESTS FOR COSTS AND FEES

Local Rule 54.2.1, citing FRCP 54(d), provides that "[t]he Clerk of Court shall tax costs as authorized by law in all civil cases." FRCP 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law." This Court has, by way of its November 9, 2022 Judgment [*see* Doc. 95], declared that Phoebe "shall also recover costs of this action."

The federal statute providing for attorneys' fees with respect to actions brought pursuant to the ADA, 42 U.S.C. § 12205, states that "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, **and the United States shall be liable for the foregoing the same as a private individual**." (Emphasis added.)

Although not a part of the text of the statute, some federal courts have determined that a higher standard applies to the showing that must be made to a request for attorneys' fees by a prevailing defendant than should be applied to a request made by a prevailing plaintiff. Those cases hold generally that a prevailing defendant may obtain attorneys' fees only if the plaintiff's claims were groundless or frivolous at the time of filing, or if the plaintiff continued to litigate after it became clear the claims were groundless or frivolous. *See*, *e.g.*, *Vitale v. Georgia Gulf Corp.*, 82 Fed.Appx. 873, 876 n.9 (5th Cir. 2003); *Adkins v. Briggs & Stratton Corp.*, 159 F.3d

4

306, 307 (7th Cir. 1998). A showing of bad faith, however, is not required. The Supreme Court, in announcing the standard as to attorneys' fees in analogous civil rights cases, stated: "In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

Phoebe does not concede that a proper application of the plain language of 42 U.S.C. § 12205 mandates a higher standard be applied to a prevailing defendant, especially when the prevailing defendant is a non-profit hospital, and the losing plaintiff is a governmental agency that failed to investigate its claims prior to filing a lawsuit, utilized false or misleading information to stave off summary judgment, failed to reassess its claims as the evidence became overwhelmingly clear those claims were frivolous, and suffered an adverse jury verdict after less than one hour of deliberation. However, it matters not because the EEOC's case was without legal or factual foundation from its inception. Additionally, although a showing of bad faith is not required, such was evidenced in this litigation by way of the EEOC requesting punitive damages in a case where the jury soundly and quickly rejected the entirety of the EEOC's claims.

A governmental agency with boundless resources should be discouraged from utilizing frivolous claims to target and intimidate healthcare employers, especially those non-profit hospitals that, like Phoebe, serve a disproportionate number of indigent, uninsured, and underinsured patients. **The EEOC's callous and careless actions have caused Phoebe to divert scarce resources from the critical healthcare of this community to defend against a completely baseless lawsuit. The EEOC should bear the costs and implications of that**

5

**boondoggle, not the indigent and uninsured people of Southwest Georgia.**

### THE EEOC'S CLAIMS WERE GROUNDLESS AND FRIVOLOUS AND THE EEOC FAILED TO PERFORM A REASONABLE INVESTIGATION INTO THOSE CLAIMS

FRCP 11 provides in pertinent part that:

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, *if specifically so identified*, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . ..

(Emphasis added). Despite having the case from May 24, 2016 to the time it filed its lawsuit a year-and-a-half later, the EEOC did not conduct any true or reasonable inquiry into the allegations it made against Phoebe and its employees, Vicky Askew, Clara Hall, Melissa Hampton, and Carol Pressley. As the evidence at trial demonstrated, those ladies had a combined 148 years of experience in providing healthcare services to our community, and this is the first

time in that combined century-and-a-half of service that any of the women had ever been the subject of a charge of discrimination. The EEOC falsely accused those ladies, and their employer, Phoebe, of having violated federal law by intentionally discriminating and retaliating against a person with an alleged disability. The EEOC, by filing the lawsuit, blatantly violated Rule 11 and made a mockery of justice and abused the processes of this Court. Rule 11(c) provides that this Court may *sua sponte* impose sanctions pursuant to the Rule, including but not limited to, directing the offending party to pay "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" of Rule 11. This Court should find a violation of Rule 11, and should impose sanctions to include, but not necessarily be limited to, payment of all of the attorneys' fees and costs incurred by Phoebe in defending against the EEOC's frivolous lawsuit. Alternatively, or additionally, the Court should find that Phoebe has made the necessary showing pursuant to 42 U.S.C. § 12205 to be awarded its attorneys' fees in defending against an unreasonable and baseless lawsuit.

## KELLEY DID NOT HAVE A DISABILITY UNDER THE ADA

The EEOC filed its lawsuit on November 1, 2017, alleging that Kelley had been diagnosed with anxiety, and that the anxiety was a qualified disability under the ADA. Anxiety is not, however, a qualifying disability under the ADA unless the anxiety substantially impairs one or more major life activities. *See* 42 U.S.C. § 12102(2)(B). Kelley's sworn deposition testimony demonstrated her "general anxiety" did not substantially limit one or more of her major life activities, conceding that the full extent of the impact of the anxiety was limited to sometimes having a lack of focus, increased heart rate, sweaty palms, and feeling faint. [Doc. 32-4, p. 25:1-13] Kelley testified similarly at trial. [Doc. 96, p. 7; Doc. 97, p. 21]. Those generalized

7

complaints, that are common to almost everyone at times, do not reach the level required to be a qualified individual pursuant to the ADA, and a number of courts have deemed equally or more serious issues of anxiety and depression to fall short of constituting ADA disabilities. *See, e.g.*, *Forsyth v. Univ. of Al. Bd. Of Trustees*, 2018 WL 3012343 *4 (N.D. Ala., June 15, 2018); *Cribbs v. NFI Network Logistic Solutions, Inc.*, 2014 WL 4805328 (S.D. Ga., Sep. 26, 2014); *Martin v. Estero Fire Rescue*, 2014 WL 3400974 (M.D. Fl., July 11, 2014); *Pleasant v. D & N Elec. Co.*, 2013 WL 1340511 (N.D. Ga., April 1, 2013); *Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1268 (N.D. Okla. 2016), aff'd, 687 Fed.Appx. 748 (10th Cir. 2017).

Additionally, Kelley's medical records prior to her termination of employment with Phoebe do not reflect the report by Kelley, or a finding by her healthcare providers, of any substantial impairment of a major life activity. The EEOC filed its FRCP 26(a) initial disclosures on February 12, 2018, more than three months after the filing of the lawsuit, and did not list Kelley's medical records in response to the Rule's mandate to "[p]rovide a copy – or description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." The EEOC could easily have obtained Kelley's medical records, either by way of a Health Insurance Portability and Accountability Act ("HIPAA") authorization from Kelley, or by way of a subpoena. The EEOC did neither, and the EEOC failed to speak with Kelley's healthcare providers until their depositions were taken more than a year after the EEOC filed its frivolous lawsuit.

Because there was no evidence – including the medical records – demonstrating that Kelley's anxiety substantially impaired a major life activity, all of the EEOC's claims based upon her purported disability should never have been filed, and likely would have been

dismissed as a matter of law pursuant to Phoebe's motion for summary judgment, had the EEOC not made a misleading representation to the contrary. However, in an improper (but, unfortunately, successful) attempt to stave off summary judgment, the EEOC misrepresented to the Court with respect to the impact upon Kelley of her anxiety that "Kelley's generalized anxiety disorder substantially limits the major life activities of sleeping, concentrating, and communicating. . . . More importantly, Kelley's generalized anxiety disorder also substantially limits the major life activities added by the ADAAA that include the 'major bodily functions' of 'neurological [and] brain functions.'" [Doc. 39, p. 17] Those statements by the EEOC are not supported by Kelley's deposition or trial testimony or by Kelley's medical records, and were simply manufactured or embellished upon by the EEOC.[3] The EEOC realized it had to manufacture non-existent impairments to survive summary judgment because, as noted above and shown by the cited cases, anxiety is not necessarily a disability pursuant to the ADA. The lack of evidence of any substantial impairment of any major life function on the part of Kelley was reflected in the jury taking such a short time to find that Kelley did not have a disability under the ADA.

### MELISSA HAMPTON DID NOT HAVE ACTUAL KNOWLEDGE OF KELLEY HAVING A DISABILITY; NOR WERE ANY ADVERSE ACTIONS TAKEN AGAINST KELLEY BECAUSE OF A DISABILITY

Kelley did not have a disability, so there is no way any Phoebe employee, including the decision-maker, Melissa Hampton, could have had actual knowledge of a non-existent disability on the part of Kelley. Nor, of course, could any adverse action have been taken on the basis of a

---

[3]  Even worse is that the EEOC utilized the online Merriam-Webster dictionary to define and mischaracterize for purposes of summary judgment a medical term utilized by Carla Johnson, the physician's assistant who treated Kelley, instead of asking Ms. Johnson to define the medical term as she had used and intended it. [*See* Doc. 39, p. 17]

non-existent disability. The EEOC did not even show that Ms. Hampton, as the decision-maker, knew that Kelley had been diagnosed with general anxiety. The EEOC knew prior to filing its lawsuit that Phoebe utilized a third-party administrator ("TPA") to handle medical leave requests from Phoebe employees. One of the primary purposes of utilizing a TPA for employee medical requests is to keep private an employee's medical condition, so that the medical condition cannot become the basis of an adverse decision by the employee's superiors. Accordingly, no Phoebe employee knew of any purported disability on the part of Kelley, and no Phoebe employee believed Kelley to be disabled.

While Kelley alleges she, on a date she claims she cannot recall, told Ms. Hampton and Kelley's immediate supervisor, Carol Pressley, that she "had anxiety," there is no corroborating evidence of that conversation and Kelley does not claim she told them she had actually been diagnosed by a healthcare provider as suffering from anxiety, rather than it being just some off-hand remark. Regardless, it took the jury less than one hour to determine that no Phoebe employee who made an adverse decision regarding Kelley had actual knowledge of any actual disability on the part of Kelley, and to also find that no adverse action was taken against Kelley because of a disability.

### KELLEY WAS NOT REGARDED AS DISABLED UNDER THE ADA

As noted above, the EEOC knew prior to filing its lawsuit that Phoebe utilized a TPA to handle medical leave requests from Phoebe employees. Accordingly, no Phoebe employee knew of any purported disability on the part of Kelley, and no Phoebe employee believed Kelley to be disabled. The Phoebe employees who testified at trial declared they had never witnessed anything in the behavior of Kelley that indicated she had any medical issues, much less a

disability. The medication that Kelley claimed to be on (which the pharmacy records proved to be a false claim), and which allegedly made Kelley drowsy such that she needed weekends off, could have been any number of medications for any number of conditions, including relatively minor health issues. For example, she could have been taking melatonin as a sleep aid, which can cause daytime drowsiness, or could have been taking diphenhydramine (Benadryl) for allergies, which could also cause drowsiness. There was simply nothing in the taking of a medication that could cause drowsiness that indicated a disability.

Nor did the EEOC present any evidence whatsoever that Kelley was regarded as disabled by any Phoebe employee. While the EEOC elicited testimony from Kelley that on some unknown date prior to her termination she claims to have told Ms. Pressley and Ms. Hampton that she had anxiety, that questionable testimony, even if believed, falls short for a number of reasons. First, as above noted, Kelley does not claim she told them she had actually been diagnosed as having anxiety. Second, anxiety is common among the population and is not a disability under the ADA, unless it is severe enough to substantially impair a major life activity. A simple statement that one has anxiety fails to cross that bar. Third, Kelley did not allege that she mentioned her taking of the medication was related to anxiety. Fourth, Kelley did not allege that she mentioned to any Phoebe employee that her anxiety was related to the requests for leave that she had made. Nor did Kelley allege to any Phoebe employee that her anxiety was related to her demand that she not work weekends. In sum, there is no evidence whatsoever that anyone employed by Phoebe, including the decision-maker, Ms. Hampton, ever regarded Kelley as disabled, and the EEOC has known from before the filing of the lawsuit it was aware of no such evidence.

11

### KELLEY'S REQUESTS FOR AN ACCOMMODATION WERE NOT MADE IN GOOD FAITH

The EEOC's pleadings were vague, ambiguous, and confusing. It appeared the EEOC was contending that Kelley asked for an accommodation in the form of not being required to work weekends, even though she had initially agreed to do so as a condition of her being hired, but later reneged, and /or that Kelley requested an accommodation of a two-week leave in May 2016, although she never told Phoebe the reason for the requested leave. In either event, the requests were, as determined in less than one hour by the federal jury, not made in good faith.

As to the former, Kelley claimed that due to a medication she was taking, her doctor had ordered her to not work weekends. As shown above, Kelley was not even purchasing the medication she claimed would make her too drowsy to work weekends. The EEOC would have known this had it done any kind of reasonable investigation of the claims it filed in this lawsuit. The EEOC did not list Kelley's pharmacy records in its Rule 26(a) initial disclosures, meaning the EEOC still did not have those records three months after filing suit. The EEOC could have obtained the pharmacy records by way of a HIPAA authorization from Kelley, or it could have used its nationwide subpoena powers to obtain the documents. The EEOC's failure to obtain the pharmacy records was not simply an element of a sloppy investigation, it was no investigation at all, and that failure resulted in a travesty of justice, including the public labeling of four innocent women as federal lawbreakers.

Nor, according to the testimony of physician assistant, Carla Johnson, was Kelley ordered to not work weekends. Ms. Johnson conceded that any two days off in a row, regardless of the days of the week, would have been sufficient in the event Kelley ever purchased the medication and actually took it in such increased doses that it ever made her drowsy. Kelley fabricated the mandate to be off on weekends so that she would not have to work the Saturday shifts for which

she would be needed when her co-employee went out on maternity leave.

As to the two-week leave, the EEOC knew from the very beginning that there was nothing relating that requested leave to Kelley's anxiety – even had the anxiety constituted a disability. As far as the trial evidence is concerned, the "return to work" note [*see* Exhibit "C" attached hereto] was the only thing Kelley ever submitted with respect to the leave. It did not mention anything about the reason for the requested leave, and was signed only by a CNA, which was not sufficient for purposes of requesting leave through the TPA. The EEOC never had any evidentiary basis for claiming the two-week leave was related to any disability, including Kelley's pseudo-disability, anxiety. The EEOC would have known, had it obtained the medical and pharmacy records prior to filing the lawsuit, that Kelley did not have a disability pursuant to the ADA and was not on the medication she claimed was making her too drowsy to work weekends. Thus, the two-week leave could not possibly have been related to an ADA disability. There is simply no excuse – no excuse whatsoever – for the EEOC to have failed to conduct any investigation into its public allegations against Phoebe.

### PHOEBE'S PROFFERED REASONS FOR THE TERMINATION OF KELLEY'S EMPLOYMENT WERE NEITHER FALSE NOR A PRETEXT FOR DISCRIMINATION

It took the jury less than one hour to determine that Phoebe's proffered reasons for the termination of Kelley's employment were neither false nor a pretext for discrimination on the basis of a disability. The EEOC claimed to not have figured that out over the five years it protracted and dragged out this litigation, but there was no excuse for that ignorance or for the EEOC simply ignoring the undisputed evidence. Phoebe maintained from the time it answered the lawsuit up through trial that it had refused to agree to Kelley's demand to have weekends off,

because working weekends were a part of her job description and of the essential functions of her position, and she had agreed as a condition of employment that she would work weekends. Phoebe maintained from the beginning through trial that its relevant personnel had never heard of a medication that, whether taken on a Monday morning, Wednesday afternoon, or Friday at Noon only made the taker of the medication drowsy on Saturday and Sunday. Kelley's own medical providers, Ms. Johnson and Dr. Michael Satchell have testified consistently that they are unaware of any such medication. The EEOC had no legitimate reason to continue to advance its and Kelley's utterly ridiculous positions with respect to the medication.

The evidence was undisputed that Kelley took time off in May 2016 that had not been approved by her supervisor, Ms. Pressley, or by the head of the Medical Records Department, Ms. Hampton. Kelley was ordered to come in to work to meet with Ms. Pressley, Ms. Hampton, and a human resources representative, Clara Hall. Kelley came in over her own objections, ended up on the floor (claiming she fainted and fell), and was taken home. The evidence is undisputed that Kelley never again contacted anyone at Phoebe, and after six days (including three business days) was deemed – pursuant to Phoebe policies admitted into evidence at trial – to have voluntarily resigned her employment.

The evidence was clear throughout this case that Phoebe offered Kelley any other two days off that did not include Saturday, and did not take any action against Kelley because of the medication; rather, Phoebe took action against an employee who lied about the effects of a medication she was not taking, who refused the reasonable accommodation not due her but offered her nonetheless, who took unauthorized leave, and who violated Phoebe's no-call/no-show policy.

Had Kelley truly believed her termination to be unjust or improper in any manner, she

14

could have utilized Phoebe's internal appeals process, but she did not. Ms. Hall testified at trial that **the second stage of the appeal would have allowed Kelley to choose *four of the five people* on the review panel**, but Kelley refused to file an appeal of her termination. Instead, five days after her termination, Kelley had an attorney help her file her Intake Questionnaire with the EEOC.[4] Kelley did not want her job, she wanted a lawsuit. Likewise, the EEOC never wanted justice in this case, the EEOC wanted headlines and capitulation from Phoebe in the face of the EEOC's overwhelming resources.

## PHOEBE IS ENTITLED TO ITS COSTS PURSUANT TO FRCP 54, LOCAL RULE 54, AND THIS COURT'S JUDGMENT OF NOVEMBER 9, 2022

FRCP 54(d) provides that, with certain exceptions not here applicable, that costs (other than attorneys' fees) shall be allowed to the prevailing party. Local Rule 54.2.1 provides that "[t]he clerk of the court shall tax costs as authorized by the law in all civil cases." (Citing FRCP 54(d)). This Court declared in its November 9, 2022 Judgment [see Doc. 95] that Phoebe "shall also recover costs of this action."

Pursuant to Local Rule 54.2.1, attached hereto as Exhibit "D" is a list of allowable costs as recorded on the form provided by the Clerk of the United States Middle District of Georgia.

## PHOEBE SHOULD BE AWARDED ATTORNEYS' FEES DUE TO THE EEOC FILING AND CONTINUING TO LITIGATE CLAIMS IT KNEW, OR CLEARLY SHOULD HAVE KNOWN WERE FALSE, GROUNDLESS, AND BASELESS

As shown above, there can be no question that the EEOC did not perform any semblance

---

[4] Kelley actually filed the Intake Questionnaire while still on the unapproved two-week leave. She claimed to be too ill to report to work – or even call in to work, but felt well enough to visit an attorney and fill out and file the Intake Questionnaire. **All of this would have been known to the EEOC at the time it filed its lawsuit.**

of a reasonable investigation into Kelley's claims. The EEOC falsely certified to this Court pursuant to FRCP 11 "that to the best of the [EEOC and its filing attorneys] knowledge, information, and belief, ***formed after an inquiry reasonable under the circumstances***" the claims filed in the instant lawsuit "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." The EEOC did not specify any of its claims for which further investigation would be required to provide evidentiary support. Indeed, contemporaneous with the filing of the lawsuit, the EEOC falsely and recklessly proclaimed in the media that Kelley "sought to exercise her rights under the ADA to receive a reasonable accommodation, but instead of accommodating her, the hospital simply kicked her out the door. Such conduct violates federal law, and the EEOC is here to stand up for the victims of such thoughtless discrimination." [5] Thus, the EOCC represented in its pleadings and to the public at large that it had a good-faith basis for its claims. The representation in both forums was patently untrue.

Under 42 U.S.C. § 12205, "[a] reasonable attorney's fee, in turn, is calculated 'by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Caplan v. All American Auto Collision, Inc.*, 36 F.4th 1083, 1089 (11th Cir. 2022) (quoting *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "The sum of this calculation is often called the 'lodestar.' *Id.*, at 1089 (citing *Ass'n of Disabled Ams.*, 469 F.3d at 1359 (quoting *Hensley*, 461 U.S. at 433–34, 103 S.Ct. 1933)). The *Caplan* Court notes that while

---

[5]  To date, the EEOC has not offered a private or public apology for the atrocious lack of investigation of the claims in this lawsuit, or of the false and defamatory statements as to Phoebe and four community servants whose reputations were smeared by the EEOC's false and thoughtless grandstanding statements.

"there is a 'strong presumption' that the lodestar is the reasonable sum" to be awarded, "the [district] court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Caplan*, 1089-90 (quoting *Ela v. Destefano*, 869 F.3d 1198, 1203 (11th Cir. 2017) (alteration in original) (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam)); (citing *Hensley*, 461 U.S. at 434 n.9, 103 S.Ct. 1933). "Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.*, at 1090 (quoting *Ass'n of Disabled Ams.*, 469 F.3d at 1359 n.1) (citing *Johnson*, 488 F.2d at 717-19).

Here, Phoebe and its legal counsel faced the power and resources of the federal government. The EEOC has in-house investigators and almost limitless subpoena power. The EEOC writes, interprets, and enforces the regulations at issue in this matter, and have the advantage of that experience and the associated resources. The case can certainly be considered "undesirable" for all of those reasons, and because it requires the defense of a large entity against the claims of an individual who could gain sympathy in that regard and also because of the individual's purported disability. The EEOC had in this case also tried to poison the potential jury well and sway public opinion by broadcasting its false and defamatory media statements proclaiming Phoebe's "guilt." Additionally, the EEOC declared in a 2020 press release that the agency had in the 2020 fiscal year "secured $439.2 million for victims of discrimination in the

private sector and state and local government workplaces through voluntary resolutions and litigation," and that the "***EEOC achieved a successful outcome in 95.8 percent of all district court resolutions***." *EEOC Releases Fiscal Year 2020 Enforcement and Litigation Data*, Press release 02-26-2021 (emphasis supplied). It is a daunting task to defend a case against the EEOC in light of those numbers and the overwhelming resources the EEOC brings to bear.

Phoebe's attorneys have a long-time relationship with Phoebe, and handle most or all of Phoebe's employment law litigation. The fees charged Phoebe by the undersigned were on an hourly basis, and Phoebe's counsel and staff kept records of the time expended on the case. The undersigned attorneys, Ms. Sheppard and Mr. Hatcher, are among the premier employment law attorneys in South Georgia. While their primary practice has been advising and successfully defending employers against employment law claims, they have also achieved record verdicts and settlements on behalf of aggrieved employees. It is doubtful that the EEOC itself can match the results in South Georgia that Ms. Sheppard and Mr. Hatcher have achieved on behalf of employees who have been the victims of discrimination and/or retaliation. Obtaining a trial verdict against the EEOC upon less than one hour of deliberation by the jury is remarkable, especially in light of the EEOC's claimed 95.8 percent success rate. It is even more remarkable that Phoebe's counsel were able to convince the jury that Kelley was not even disabled, when the EEOC is supposed to be the expert in that regard.

Pursuant to Local Rule 54.1, attached hereto as Exhibit "E" are itemized bills reflecting time for which the undersigned seek as attorneys' fees on behalf of Phoebe, in which all segments of time are identified as to the nature of the work performed, a breakdown of the time for each attorney working on the case, the applicable hourly rates and how those rates were

derived. The undersigned have also executed certifications that the work performed was reasonably necessary to the preparation and presentation of the case.

Phoebe respectfully requests this Court note that the undersigned have cut certain of their times, and that Phoebe is not seeking reimbursement for any other lawyers or the paralegals who worked on this case, and who billed almost $18,000 for their work on the case. The fees requested are not only reasonable, but could be the subject of a multiplier without running afoul of fairness and reasonableness.

Respectfully submitted, this 22nd day of November, 2022.


WATSON SPENCE LLP
Attorneys for Defendant

BY:    */s/ Alfreda L. Sheppard*
Alfreda L. Sheppard
Georgia State Bar No.: 525106
Louis E. Hatcher
Georgia State Bar No.: 337342
Post Office Box 2008
Albany, Georgia 31702-2008
(229) 436-1545 Telephone
(229) 436-6358 Facsimile
Asheppard@watsonspence.com
Lhatcher@watsonspence.com