IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. |
| v. | : : : | 1:17-cv-00201-LAG |
| PHOEBE PUTNEY MEMORIAL HOSPITAL, INC., | : : : : | |
| Defendant. | : : | |

**<u>PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE IN OPPOSITION TO DEFENDANT'S POST-TRIAL MOTION FOR COSTS AND ATTORNEYS FEES</u>**

Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission") files this, its Response in Opposition to Defendant Phoebe Putney Memorial Hospital, Inc.'s ("Defendant") Post-Trial Motion for Costs and Attorneys' Fees (the "Motion") (Doc. No. 98-1).

The EEOC is a federal agency responsible for enforcing federal laws that make it illegal to discriminate against an employee because of the person's race, color, religion, sex, national origin, age, disability, or genetic information. https://www.eeoc.gov/overview. Defendant attempts in the Motion to paint the EEOC as a nefarious, rogue litigant. Instead, the EEOC was created by Congress to "prevent and remedy unlawful employment discrimination and advance equal opportunity for all in the workplace." <u>Id.</u> That is precisely what the Commission sought to do here. The EEOC sought to seek relief after a thorough investigation[1]—in which the Defendant had the opportunity to participate—on behalf of an alleged victim of disability discrimination.

---

[1] Defendant contends that Kelley declared that race was the primary belief for her termination in her Intake Questionnaire, and that disability was "only an add-on." Defendant's representation is

## I. BACKGROUND AND PROCEDURAL HISTORY

The Commission sought relief on behalf of Wendy Kelley ("Kelley"), alleging that Defendant discriminated against her when it discharged her because of her disability (Generalized Anxiety Disorder) or because Defendant perceived Kelley as disabled, and discharged her in retaliation for requesting a reasonable accommodation—two weeks of leave—all in violation of the Americans with Disabilities Act of 1990, as amended (the "ADA"). (Doc. No. 1, p.1). Not-for-profit entities are not exempt from the statutory framework of the ADA; Defendant is one of the largest employers in Southwest Georgia and is obligated to comply with federal employment laws.

Defendant now seeks to waste the Court's time and resources with a baseless Motion for attorney's fees. The Commission's claims do not come close to meeting the Eleventh Circuit's frivolity standard. In fact, this Court denied Defendant's Motion for Summary Judgment, determined that the EEOC had presented sufficient evidence to satisfy its *prima facie* case of discrimination and retaliation, and permitted this action to proceed to a jury trial. (Doc. No. 53). Despite this procedural posture, Defendant now inexplicably argues that the EEOC acted "callously and carelessly" in litigating this case and have made a "mockery of justice" (Doc. No. 98-1).[2] Defendant's version of what transpired in this action is simply without merit. Although the Commission is disappointed by the jury verdict returned here, there is no support for Defendant's argument that this lawsuit was frivolous or that the EEOC's attorneys acted unreasonably.

---

misleading. Kelley's only allegation related to her discharge (which is the basis of the EEOC's Complaint) in the Intake Questionnaire related to her disability. After a diligent investigation of the allegations, the EEOC found reasonable cause that Defendant violated the ADA, and not Title VII or the ADEA.

[2] Defendant also peculiarly suggests in a footnote that the EEOC "rakes in hundreds of millions of dollars," despite the very same document to which it refers clearly stating that the money recovered goes to victims of discrimination – not to the EEOC itself.

## II. ARGUMENT AND CITATIONS OF AUTHORITY

### A. Defendant's Bill of Costs Should be Denied in Part.

Defendant's Bill of costs [Doc. No. 100] seeks photocopying charges, which are included in its Exhibit "A" to the Bill of Costs [Doc. No. 100-1]. The photocopying charges should be denied because Defendant "did not present required evidence regarding the documents copied including their use or intended use." Cullens v. Georgia Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994). Defendant also did not "offer any reason why all the photocopying expenses listed in the itemized bill of costs were necessary" to the defense of the claims. See Araya v. Fulton-DeKalb Hosp. Auth., 2009 WL 10664808, at *3 (N.D. Ga. May 6, 2009), report and recommendation adopted, 2009 WL 10664774 (N.D. Ga. May 26, 2009). In fact, Defendant does not say what was copied or why. Therefore, they should be denied.

In addition, Exhibit "A" to the Bill of Costs [Doc. No. 100-1] seeks reimbursement for lunch at Subway restaurant on the first day of trial. The only costs for which a party may seek are set forth in 28 U.S.C. section 1920. See Lovett v. KLLM, Inc., 2007 WL 983192, at *5 (N.D. Ga. Mar. 26, 2007)("this court may not tax any cost unless it falls within one of the categories enumerated by the statute.") Lunch at trial is not included. Therefore, it should be disallowed.

### B. Defendant's Motion for Attorneys' Fees Should Be Denied.

To justify an award of attorney's fees under the ADA, a court must determine that a plaintiff's case was "frivolous, unreasonable, or groundless." Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1179 (11th Cir. 2005) citing Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422, 98 S. Ct. 694, 701 (1978)("To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the

3

provisions of Title VII.").³ In reviewing frivolity determinations, Courts view the evidence in the light most favorable to the non-prevailing plaintiff. See id. The binding precedent in the Eleventh Circuit is where the plaintiff establishes a *prima facie* case, as the EEOC did here, that means the claims is not frivolous. See Quintana v. Jenne, 414 F.3d 1306, 1310 (11th Cir. 2005) citing E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571 (11th Cir. 1993).

Defendant moved for summary judgment on both the EEOC's disparate treatment claim and its retaliation claim. The Court found that not only did the EEOC establish a *prima facie* case for both claims, but that there was a question of fact as to whether the proffered reasons for discharging Kelley were pretextual, which meant that the case should proceed to trial. See E.E.O.C. v. Phoebe Putney Mem'l Hosp., Inc., 488 F. Supp. 3d 1336 (M.D. Ga. 2020). This finding is sufficient by itself to deny the Motion. See Quintana, 414 F.3d at 1310; see also Reichhold Chemicals, 988 F.2d at 1571.

In addition to the Court denying summary judgment, it also denied Defendant's Motion for Judgment as a Matter of Law pursuant to Rule 50, Federal Rules of Civil Procedure. This ruling further demonstrates that the EEOC's claims were not frivolous. See E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 518 (4th Cir. 2012)("the denial of a motion for judgment as a matter of law made at the close of all evidence strongly indicates that the plaintiff's case was not frivolous, unreasonable, or groundless."); see also Lowery v. Jefferson Cnty. Bd. of Educ., 586 F.3d 427,

---

³ Defendant states, "***some federal courts*** have determined that a higher standard applies to the showing that must be made to a request for attorneys' fees by a prevailing defendant than should be applied to a request made by a prevailing plaintiff" and then cites two out of circuit opinions. [Doc. No. 98-1, pp. 4-5] (emphasis added). In fact, the Supreme Court that set this standard, which Defendant knows because the Supreme Court case is cited by both cases proffered by Defendant and Defendant cites the Supreme Court standard later in the same paragraph. Id. And it has been clear since at least 2005 that the Eleventh Circuit applies the Christiansburg standard to ADA claims under 42 U.S.C. section 12205. See Cordoba, 419 F.3d at 1179.

438 (6th Cir. 2009)(Holding that it will be difficult to deem a claim frivolous where the plaintiff presented sufficient evidence at trial to prevent the entry of a judgment as a matter of law.).

Factors considered in determining whether a claim is frivolous include: "(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Sullivan v. Sch. Bd. of Pinellas Cnty., 773 F.2d 1182, 1189 (11th Cir. 1985). "In addition to the three Sullivan factors, this Court has recognized a fourth consideration: whether there was enough support for the claim to warrant close attention by the court." Beach Blitz Co. v. City of Miami Beach, Fla., 13 F.4th 1289, 1302 (11th Cir. 2021). The EEOC established a *prima facie* case on both of its claims and the Court did not dismiss the case prior to or even after a full-blown trial on the merits, which demonstrates there was enough support for the claims to warrant close attention by the Court. See Quintana, 414 F.3d at 1310; see also Great Steaks, 667 F.3d at 518.

**(1)    The EEOC's Claim that Kelley was Disabled Under the ADA Was Not Frivolous.**

Defendant again raises its failed argument that Kelley's diagnosed Generalized Anxiety Disorder could not, as a matter of law, amount to a disability under the ADA because it did not "substantially impair one or more major life activities." (Doc. 98-1, p. 7). The ADA Amendments Act ("ADAAA"), however, provides that "[t]he definition of disability [] shall be construed in favor of broad coverage . . . ." 42 U.S.C. § 12102(4)(A). "[W]hether an individual meets the definition of disability under this part should not demand extensive analysis." 29 C.F.R. § 1630.1. Defendant argues that the EEOC's claims are frivolous because the EEOC did not obtain medical records during the investigation. However, "[t]he comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population ***usually will not require scientific, medical***, or statistical analysis." 29 C.F.R. § 1630.2

(emphasis added). And the EEOC obtained all of the relevant medical records during discovery, which allowed it to establish a *prima facie* case that Kelley was disabled.

Setting aside the problematic nature of a hospital arguing that Generalized Anxiety Order cannot be a disability because the symptoms are "common to almost everyone at times" (Doc. No. 98-1, 8), the ADAAA makes clear that Kelley's diagnosis is a mental impairment. 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2(h)(2). Likewise, the EEOC's contention that Kelley's mental impairment "substantially limited" one or more major life activities was objectively reasonable under a plain reading of the ADAAA. Under the ADAAA,

> [a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity to be considered substantially limiting.

29 C.F.R. § 1630.2(j)(1)(ii). The ADAAA also considers "the way an impairment affects the operation of a major bodily function." § 1630.2(j)(4)(ii). Despite extensive briefing on the issue, Defendant has repeatedly ignored the ADAAA and focuses solely on the traditional pre-ADAAA group of "major life activities." The EEOC had a reasonable belief that Kelley's Generalized Anxiety Disorder substantially limits the major life activities of sleeping, concentrating, and communicating, but also substantially limits the major life activities added by the ADAAA that include the "major bodily functions" of "neurological [and] brain functions." See 42 U.S.C. § 12102(2)(A); 42 U.S.C. § 12102(2)(B). In fact, in denying Defendant's motion for summary judgment, the Court agreed there was sufficient evidence to let a jury decide. Thus, the EEOC's position was both objectively reasonable and not frivolous.

Defendant also belabors the timing of the EEOC's collection of Kelley's medical records, yet the record clearly demonstrates that the Commission obtained her medical records and deposed

her medical providers; and that those records and the testimony *created an issue of material fact for a jury to decide whether Kelley was disabled.* Kelley and her medical provider, Carla Johnson, testified during depositions and at trial about Kelley's inability to focus, sweaty palms, racing heart, feeling faint, tearfulness, feelings of stress, and inability to sleep. This Court previously held that "[t]he EEOC presented sufficient evidence in the form of Kelley's testimony, Johnson's testimony, and the medical records that Kelley's ability to concentrate, think, sleep, or communicate was substantially limited compared to most people in the general population." (Doc. No. 53, p. 16). Defendant now accuses the Commission of improperly representing to the court that Kelley's impairment substantially limited the major life activities of sleeping, concentrating, communicating and her neurological and brain function. (Doc. No. 98-1, p. 9). Yet, the testimony both during depositions and at trial and the medical records are explicit: during episodes of anxiety, Kelley had trouble focusing, was restless and had trouble sleeping, and experienced other physiological symptoms to include sweaty palms, fainting, and crying spells. The EEOC did not "manufacture" any of the testimony or medical records herein; the EEOC carefully relied upon the actual record in crafting its detailed response to Defendant's unsuccessful Motion for Summary Judgment and did not make any "misrepresentations" to the Court regarding the same.

Thus, an award of attorney's fees on the basis that Kelley did not have a disability is clearly unwarranted, especially in light of this Court's previous ruling that, "viewing the testimony regarding Kelley's anxiety disorder and Kelley's medical records in the light most favorable to the EEOC, the EEOC has established that Kelley's anxiety disorder was an impairment that substantially limited major life activities, rendering her a person with an actual disability." (Doc. No. 53, p. 16). Although the factfinder herein (i.e. the jury) ultimately determined that Kelley was

not disabled after weighing the evidence above, the factfinder's decision does not suddenly render the underlying claims frivolous or the EEOC's actions unreasonable.[4]

### (2) The EEOC's Claim that Kelley Was Subjected to Discrimination Because of Her Actual Disability Was Not Frivolous.

Defendant insists that decisionmaker Melissa Hampton ("Hampton") did not know that Kelley had a disability and therefore could not have taken an action against her based on her disability. (Doc. No. 98-1, p. 9). Yet, Kelley testified in her deposition and at trial that she told both Hampton and supervisor Carol Pressley that she suffered from anxiety prior to her discharge. Defendant suggests that because there was no "corroborating evidence" of this conversation, it was somehow unreasonable for the EEOC to rely upon Kelley's sworn testimony that she told her supervisors about her disability. This question was a question of fact for a jury to decide—which it did. While the EEOC does not agree with the jury's verdict, the fact of a jury verdict in Defendant's favor does not immediately render the EEOC's claim frivolous or unreasonable.

### (3) The EEOC's "Regarded as" Claim Was Not Frivolous.

Defendant also misunderstands the law surrounding claims of discrimination on the basis that an employer perceives its employee as disabled under the ADA.[5] (ECF 98-1, 11). Indeed, in Defendant's closing argument, Defendant improperly told the jury that it was required to know that Kelley had an actual disability for it to regard her as such. That is not the law. "An individual

---

[4] Defendant's repeated insistence that the jury's length of deliberations carries the day is a mere distraction and pure speculation. (Doc. No. 98-1, p. 9).

[5] Defendant also argues that the side effects of Kelley's medication could not constitute a disability. The EEOC has not raised any claim that Kelley was disabled based on the side effects of her medication, and has repeatedly argued that the effects of Kelley's medication should not be considered under the ADA. "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as-- (i) medication . . .." 42 U.S.C. § 12102(4)(E)(i). Rather, the EEOC argued that Kelley requested an accommodation or weekends off related to the *treatment* of her actual disability, Generalized Anxiety Disorder, which the EEOC alleged was granted by Defendant.

meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to [discharge] because of an actual or perceived physical or mental impairment ***whether or not the impairment limits or is perceived to limit a major life activity***." 42 U.S.C. § 12102(3)(A)(emphasis added). "[A] plaintiff need demonstrate only that the employer regarded him as being ***impaired,*** not that the employer believed the impairment prevented the plaintiff from performing a major life activity." Wolfe v. Postmaster General, 488 Fed. App'x 465, 468 (11th Cir. Aug. 31, 2012) (emphasis added).

The record on summary judgment and at trial demonstrates that Hampton knew that Kelley was taking medication for treatment of an impairment, and the treatment caused her to need time off. Hampton testified that she denies employees time off if the medical records department needs coverage. A fact issue existed as to whether Hampton regarded Kelley as disabled when she discharged Kelley because of her request for medical leave and because of Hampton's belief that Kelley would need additional time off for her impairment. Indeed, this Court held in its order denying Defendant's Motion for Summary judgment that, "[i]n response to Kelley's request for accommodation related to her anxiety, Hampton worked with Kelley to develop a reasonable accommodation—allowing her two consecutive non-weekend days off. Thus, the evidence clearly demonstrates that Defendant regarded Kelley as impaired." (Doc. No. 53, p. 16).

Simply put, the EEOC's claim that Defendant regarded Kelley as disabled—regardless of whether her anxiety substantially limited a major life activity, was not frivolous and warranted a trial by a jury.

### (4) The EEOC Acted Reasonably in Alleging that Kelley's Request for Two Weeks of Leave as an Accommodation was Made in Good Faith.

As made clear by the EEOC in its Complaint, the claims herein were that Defendant discriminated against Kelley when it discharged her because of her disability (Generalized Anxiety

9

Disorder) or because Defendant perceived Kelley as disabled, and/or discharged her in retaliation for requesting a reasonable accommodation—two weeks of leave—all in violation of the ADA. (Doc. No. 1). The record evidence was sufficient for a trier of fact to determine whether Kelley made the request for two weeks of leave in good faith.

The EEOC conducted a reasonable investigation and contended (and still contends) that Kelley's anxiety is disabling and amounts to a disability under the ADA. Defendant argues that the EEOC had no "evidentiary basis" for claiming Kelley's request for two weeks of leave was related to her anxiety, and Defendant would have the Court ignore Johnson's sworn testimony both in her deposition and at trial that she recommended Kelley take two weeks off in May 2016 for treatment of her anxiety and menopausal symptoms. See Johnson Dep., 53:6-54:12. Just because the doctor's note Kelley presented to Pressley did not mention this, does not mean it was not true. And there was no evidence in this case that Defendant ever asked Kelley for more information as to why she was requesting leave; Hampton just denied the request.

Kelley, in good faith and in reliance on her medical provider's direct orders, brought a doctor's note to her supervisor to request two weeks off work due to her disability (Generalized Anxiety Disorder). Kelley was then discharged less than a week later. Defendant's assertion that the two-week leave request "could not possibly have been related to any ADA disability" is simply without merit; and its suggestion that the EEOC failed to conduct any investigation into the issue is likewise unwarranted and meritless.

**(5)   The EEOC's Argument that Defendant's Proffered Reasons for Discharging Kelley Were Pretextual Were Not Frivolous.**

The EEOC acted reasonably in arguing that Defendant's proffered reason for Kelley's termination—Kelley's purported "demand" to have weekends off—was nothing more than pretext

for unlawful discrimination and retaliation.[6,7] The EEOC was reasonable in its contention that Kelley was not discharged because of her "refusal to work weekends." Indeed, the record testimony showed that as of May 3, 2016, the weekend issue had been "worked out," meaning that Defendant and Kelley agreed that she would take Sundays and Mondays off instead of Saturdays and Sundays, when covering for Katherine Patten's shifts. Kelley testified that she understood that the weekend issue had been resolved as of May 3, 2016, and that she had agreed to cover three Saturday shifts for Patten before she requested two weeks of leave on May 4, 2016. Furthermore, an email sent to Kelley by Hampton on May 3, 2016, suggests in its second paragraph that the maternity leave weekend coverage issue had been resolved, and also went on to explain,

---

[6] Defendant argues that the "EEOC claimed to have not figured that out over the five years it protracted and dragged out this litigation, but there was no excuse for that ignorance or for the EEOC simply ignoring the undisputed evidence." (Doc. No. 98-1, pp. 13-14). The EEOC continues to assert that its case had merit and warranted careful consideration by this Court and a factfinder, as shown by its defeat of Defendant's motion for summary judgment. (Doc. No. 53). Furthermore, it was not the EEOC who delayed trial herein. After the Court denied Defendant's summary judgment motion, the trial was twice continued due to the COVID-19 global pandemic, and once again continued due to the trial judge's calendar conflict. The EEOC has been ready to proceed with trial since November 2020. Due to circumstances outside its control, this trial did not occur until October 2022. Indeed, it was Defendant's attorney who informed the Court in a February 22, 2022 email that Defendant preferred an October 2022 trial date as opposed to an earlier date in March or April 2022 that the EEOC sought.

[7] Defendant continues to conflate a reasonable accommodation request with the essential functions of a job. That is, if presence at work is an "essential function" of the job for purposes of determining whether an individual is qualified, then leave could never be a "reasonable accommodation." This is a direct contravention of Eleventh Circuit case law that a defined period of leave can be a reasonable accommodation if it would allow an employee to continue work "in the immediate future." Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003); E.E.O.C. v. Harrison Poultry, Inc., 2016 WL 8309041, at *11 (N.D. Ga. June 1, 2016), report and recommendation adopted, 2016 WL 8309666 (N.D. Ga. Aug. 3, 2016) (issue of fact whether plaintiff requested leave for a definite period of time, and distinguishing cases where plaintiffs were on extended periods of leave and continued requesting indefinite leave before termination); Grant v. Hosp. Auth. of Miller Cnty., No. 1:15-CV-201 (LJA), 2017 WL 3527703, at *7 (M.D. Ga. Aug. 16, 2017) ("The essential job function that Defendant asserts Plaintiff was unable to perform was attendance. However, as Plaintiff was absent due to complications of childbirth that were resolved shortly after her cesarean, the question becomes whether a reasonable accommodation would enable Plaintiff to perform the essential function of her position 'presently or in the immediate future.'").

> Please do not worry about unscheduled absences . . . I want to stress to you that you have not displayed a pattern of unscheduled absences that concern us and your attendance is not a concern. If something were to change and we were to become concerned about your attendance, we would have discussions with you before you would receive a formal disciplinary action.

(Trial Exhibit J-4). Thus, it was not "utterly ridiculous," as Defendant contends, for the EEOC to argue that Defendant's proffered reason for Kelley's termination—her attendance "issues"—were nothing more than pretext for disability discrimination and retaliation when Kelley was discharged one week later for "attendance issues."

Furthermore, Defendant also admits that Hampton ordered Kelley to come to work to meet with her, Carol Pressley, and Clara Hall on May 5, 2016, in direct contravention of Kelley's doctor's orders. It is also undisputed that Kelley subsequently fainted in the lobby of Defendant's premises on May 5, 2016 (although Defendant continues to callously suggest, without any evidentiary support, that Kelley was acting when she collapsed). The record evidence also shows that no Defendant employee reached out to Kelley to check on her after she fainted. Defendant instead contends that Kelley was a "no call/no show," yet Defendant also admits to receiving a medical provider's note requesting for Kelley to be out of work for two weeks, before Kelley collapsed in Defendant's lobby. The medical provider's note explicitly told Defendant where Kelley was; Kelley was not reporting to work because she was sick, weak, and following her explicit doctor's orders. Furthermore, despite the above-referenced email from Hampton stating that she would let Kelley know if Kelley had attendance issues before any disciplinary action was issued, Hampton never again reached out to Kelley. Clara Hall admitted in her testimony that she did not, in contravention of Defendant's typical policy, reach out to Kelley to inform her of the appeals process before Defendant terminated Kelley's employment. Instead, Kelley was

discharged six days after she fainted at work.[8] Defendant therefore cannot legitimately argue that the EEOC's claim was frivolous on this basis and it is improper for Defendant to suggest that the EEOC's motives were improper.

### C. Defendant's Request for Rule 11 Sanctions Should be Denied.

Defendant also asks for this Court to award attorney's fees under Rule 11 of the Federal Rules of Civil Procedure.[9] (Doc. 98-1). Rule 11 imposes an objective standard; a court must determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. See Kaplan v. DaimierChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003). The record is clear that the Commission acted reasonably and that its actions were factually and legally justified throughout the litigation of this action.

Defendant's request for sanctions under Rule 11, Federal Rules of Civil Procedure, does not comply with Rule 11. First, a motion for sanctions under Rule 11 must be made separately from any other motion, but Defendant combines it with its motion for costs and attorneys' fees under a separate provision. See Fed. R. Civ. P. 11(c)(2). Second, the motion must be served under Rule 5, Federal Rules of Civil Procedure, but not filed or presented to the Court without providing the EEOC with 21 days-notice. Id. Defendant did not serve a Rule 11 motion on the EEOC

---

[8] Defendant contends that Kelley filed the EEOC intake Questionnaire while on unapproved two-week leave, which somehow shows that her need for leave was fabricated. Kelley filed the intake questionnaire on May 16, 2016—five days after Defendant terminated her employment and three days before she was cleared to return to work. It is inappropriate for Defendant to analogize filling out a short form that Kelley is legally entitled to complete with reporting to work scanning documents for 8-hour shifts for two weeks.

[9] Defendant has repeatedly suggested that the tenure of the four witness in this action somehow insulates Defendant from any and all claims of discrimination. (Doc. 98-1, 17). Despite that there are many reasons an individual could choose not to file a Charge of Discrimination (including ignorance of a right to file or the procedures for filing a Charge of Discrimination); all that is relevant here is that **Kelley *did* file a timely** Charge of Discrimination with the EEOC against Defendant. In addition, only one of these four women, Hampton, who was the decisionmaker, was alleged to have taken actions that caused Defendant to violate the ADA.

pursuant to Rule 5 or provide 21 days-notice prior to filing the Motion. Most importantly, Defendant was required, but failed to, serve the notice prior to the entry of judgment in this case. See Huggins v. Lueder, Larkin & Hunter, LLC, 39 F.4th 1342, 1348 (11th Cir. 2022)("If a party fulfills the safe harbor requirement by serving a Rule 11 sanctions motion at least 21 days before final judgment, then she may file that motion after the judgment is entered.") Therefore, the request for fees under Rule 11(c)(2) should be denied.

Defendant also asks that the Court *sua sponte* impose sanctions under Rule 11(c)(3). [Doc. 98-1, p. 7]. But for a Court to impose *sua sponte* Rule 11 sanctions requires "(1) a 'show-cause' order to provide notice and an opportunity to be heard; and (2) a higher standard ('akin to contempt') than in the case of party-initiated sanctions." Kaplan, 331 F.3d at 1255.

But even under the lower standard applicable to motions for Rule 11 sanctions, the Motion fails. "A court conducts a two-step inquiry when evaluating a motion for Rule 11 sanctions: (1) determining whether the non-moving party's claims are objectively frivolous; and (2) determining whether counsel should have been aware that they were frivolous." Adams v. Austal, U.S.A., L.L.C., 503 F. App'x 699, 703 (11th Cir. 2013)(citation omitted).  As shown *supra*, the EEOC's claims had ample factual basis and was based on a legal theory that resulted in the denial of Defendant's Motion for Summary Judgment and its Motion for Judgement as a Matter of Law. Therefore, the inquiry fails in the first step. Last, Defendant argues that "the EEOC wanted headlines and capitulation from Phoebe" and did not want justice. But there is no evidence that the EEOC filed this case for any purpose other than its Congressionally mandated obligation to enforce the ADA. Therefore, the Court should not impose sanctions under Rule 11 or any other rule or statute.

### III.  CONCLUSION

As shown above, the EEOC's claims in this action were not frivolous, unreasonable, or groundless. The Commission acted reasonably, and its actions were factually and legally justified throughout the entirety of this litigation.[10] The Court carefully reviewed the record developed through discovery when denying Defendant's Motion for Summary Judgment and allowed this case to proceed to a jury. The Court also denied Defendant's Motion for Judgment as a Matter of Law after careful analysis. As demonstrated above, the record evidence in this case was sufficient for a factfinder to find for the EEOC. That the Defendant prevailed at trial does not mean that the claims were unreasonable or frivolous, or that the claims were not factually and legally justified.

For the foregoing reasons, the EEOC requests that this Court deny Defendant's Motion for Attorney's Fees and deny, in part, the Bill of Costs.

Respectfully submitted, this 7th day of December, 2022.

<u>s/Steven A. Wagner</u>
Steven A. Wagner
Georgia Bar No. 000529

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION- Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:    (470) 531-4838
Facsimile:    (404) 562-6905
Email: steven.wagner@eeoc.gov

---

[10] Defendant points to a press release issued by the EEOC containing quotes from two individuals who are no longer employed by the EEOC. The language included in the press release is based on the allegations in the Complaint. Nothing in the press release was "false" or "reckless." While Defendant disagrees with the former Atlanta District Office Regional Attorney's summary of the allegations in the Complaint, its disagreement does not make the statements defamatory. Nor was the press release issued in an attempt to "poison the jury well." In fact, all individuals in the venire stated that they had not heard anything about this case prior to being summoned for jury duty.