IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : : | CIVIL ACTION FILE NO: 1:17-CV-00201-LJA |
| v. | : : | |
| PHOEBE PUTNEY MEMORIAL HOSPITAL, INC., REPLY | : : : | |
| Defendant. | : | |

**DEFENDANT PHOEBE PUTNEY MEMORIAL HOSPITAL, INC'S
REPLY BRIEF IN SUPPORT OF
POST-TRIAL MOTION FOR COSTS AND ATTORNEYS' FEES**

Comes now Defendant Phoebe Putney Memorial Hospital, Inc. ("Phoebe"), pursuant to this Court's Judgment of November 9, 2022, Rules 11 and 54(d) of the Federal Rules of Civil Procedure ("FRCP"), and Rules 54.1, 54.2.1, and 54.2.2 of the Local Rules of the United States District Court for the Middle District of Georgia ("Local Rules"), and files this its reply brief in support of its Post-Trial Motion for Costs and Attorneys' Fees and shows the Court as follows.

**PRIMARY CONSIDERATIONS**

The federal statute providing for attorneys' fees with respect to actions brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205, states that "[i]n **any** action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, **and the United States shall be liable for the foregoing the same as a private individual**." (Emphasis added.)

The issue is thus whether equity demands that Phoebe, a non-profit hospital serving one of the nation's poorest health demographics,[1] bear the cost of the EEOC's failures to perform a reasonable investigation and failure to properly analyze the extreme weaknesses of its lawsuit? As discussed below, **innocent** entities sued by the EEOC have only one of two options: (1) settle with the EEOC, which will include payment of settlement monies, injunctive relief, adverse press releases, and, even worse, mandatory entry into an onerous consent decree;[2] or (2) incur the tremendous expenses and risks in litigating the case. In other words, even the most innocent target of the EEOC's sometimes blind, misguided lawsuits, will face the specter of either admitting non-existent guilt and making payment of monies to attempt to avoid the substantial expenses associated with litigation, or incurring those litigation expenses and having the EEOC deny any accountability regardless of its misconduct. The EEOC contends that should the innocent target opt to have its constitutionally-guaranteed day in court, the innocent party should bear the burden of its own fees regardless how unfounded may be the EEOC's case. The EEOC's approach is an abject denial of due process and fundamental fairness, and ignores what it proclaims in its own internal guidances.

### THE EEOC HAS ADMITTED ITS ATTORNEYS ARE HELD TO A HIGHER STANDARD

The EEOC's contentions in its response brief are quite different than what it sets forth in its own Regional Attorneys' Manual ("EEOC Manual"). When speaking intra-agency, the EEOC

---

[1] The 2021 Health Equity Index (formerly SocioNeeds Index) assigns an index value to all zip codes, census tracts, counties, and county equivalents in the United States. The values range from 0 (low need) to 100 (high need). Albany, which comprises the majority of the metro-population served by Phoebe, has been assigned an Index Value of 98.1. https://www.phoebehealth.com/health-matters/building-healthy-communities?hcn=SocioNeeds

[2] EEOC Manual, Part 3, IV.A.

recognizes the Courts have declared that government attorneys should be held to higher standards of conduct than an "ordinary lawyer." EEOC Manual, Part 3, VI.A. (citing *Freeport-McMoran Oil & Gas Co. v. FERC*, 962 F.2d 45 (D.C. Cir. 1992); *Reid v. INS*, 949 F.2d 287, 288 (9th Cir. 1991); *United States v. Witmer*, 835 F. Supp. 208, 214-15 (M.D. Pa. 1993); *Silverman v. Ehrlich Beer Corp.*, 687 F. Supp. 67, 69-70 (S.D.N.Y. 1987)).

A discussion of the *FERC* case, cited by the EEOC as a standard for its attorneys' conduct, should be dispositive of the EEOC's resistance to reimburse Phoebe's attorneys' fees in this case:

> The notion that government lawyers have obligations beyond those of private lawyers did not originate in oral argument in this case. A government lawyer "is the representative not of an ordinary party to a controversy," the Supreme Court said long ago in a statement chiseled on the walls of the Justice Department, "but of **a sovereignty whose obligation ... is not that it shall win a case, but that justice shall be done**." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). The Supreme Court was speaking of government prosecutors in *Berger*, but no one, to our knowledge (at least prior to oral argument), has suggested that the principle does not apply with equal force to the government's civil lawyers. In fact, the American Bar Association's Model Code of Professional Responsibility expressly holds a "government lawyer in a civil action or administrative proceeding" to higher standards than private lawyers, stating that government lawyers have "the responsibility to seek justice," and "should **refrain from *instituting or continuing* litigation that is obviously unfair**." MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7–14 (1981).

962 F.2d at 47 (emphasis added); *see U.S. v. Whitmer*, 835 F.Supp. 208, (M.D. PA. 1993) ("A government lawyer 'in a civil action or administrative proceeding' is held to a higher standard than a private lawyer, because 'government lawyers have "the responsibility to seek justice," and "should refrain from instituting or continuing litigation that is obviously unfair."'"); *Silverman v. Erlich Beer Corp.*, 687 F.Supp. 67, 69-70 (S.D. N.Y. 1987) ("an attorney in the employ of the

3

government is not on the same footing as a private attorney" and "must be held to a higher standard than that of the ordinary lawyer.").

### THE EEOC IGNORED ITS OWN PRE-SUIT INVESTIGATION STANDARDS

"Charging parties should be interviewed by a legal unit attorney prior to submission of a presentation memorandum or notice of intent to file under the Regional Attorney's redelegated authority. Where practicable, **other individuals who will have significant roles in the litigation as either witnesses or claimants should also be interviewed <u>before</u> litigation is recommended** or a notice of intent submitted." [3] EEOC Manual, Part 2, II.C. (emphasis added). Two of the critical witnesses in this case were Wendy Kelley's healthcare providers, Dr. Michael Satchell and P.A., Carla Johnson. Had the EEOC spoken with those individuals prior to filing suit, the EEOC would have known that both providers would deny knowledge of any medication that would cause one to be, as claimed by Ms. Kelley, drowsy only on the weekends.[4] Both providers would also have refuted Ms. Kelley's claims that they had ordered her to not work weekends. Additionally, and critically, both providers would have disavowed issuing the note requesting that Ms. Kelley be off the two weeks in May that the EEOC claims was a request for a disability accommodation. The evidence during discovery and at trial showed, of course, that the

---

[3] The "Introduction" to the EEOC Manual states that it "shall not be construed to create any right to judicial review involving the compliance or noncompliance of the EEOC or its employees with any matter dealt with in the Manual." Putting aside the question as to whether an executive branch agency can dictate to the judicial branch what the courts may consider, what is important here is that the EEOC acknowledges that a proper investigation demands certain rudimentary, elementary principles be followed.

[4] Quite frankly, that is pure common sense and knowledge based on human experience, and should not require testimony of a healthcare provider.

two-week leave was not even related to a disability.

That latter failure on the part of the EEOC occurred because the EEOC never obtained Ms. Kelley's medical records prior to filing its lawsuit.[5] The EEOC could easily have obtained those records by way of subpoena or Health Insurance Portability and Accountability Act ("HIPAA") release from Ms. Kelley. Those records were at the very heart of the case, and there was no excuse for the EEOC to not have obtained and reviewed those records prior to filing a lawsuit and prior to publicly accusing Phoebe and its employees of violating the law.

The EEOC would downplay the unsupported contentions it advanced in its summary judgment response brief to stave off summary judgment on the issue of Ms. Kelley's purported disability.[6] The EEOC utilized a Merriam-Webster definition to define a medical term to add impairments that neither Ms. Kelley nor her providers claimed [Doc. 39, p. 17], as opposed to supplying any such information from Ms. Kelley's providers or from her medical records. [Doc. 39, p.3] The EEOC's claims that Ms. Kelley was substantially limited in her ability to sleep and communicate [Doc. 39, p. 17] had no support in the medical records, or deposition or trial testimony.

While the EEOC attempts to, by way of technical arguments, preclude this Court's consideration of Rule 11 of the Federal Rules of Civil Procedure, the point of that Rule with respect to this litigation is lost on the EEOC. Rule 11 provides in pertinent part that the filing

---

[5]  The EEOC admits that it did not obtain Ms. Kelley's medical records until discovery had commenced. By that point the EEOC had already filed its lawsuit proclaiming Phoebe's purported violations of the law and had made public statements in press releases condemning Phoebe's alleged conduct. This "egg-on-the-face" position and its win at all costs (whether by settlement or trial) mentality precluded the EEOC from a proper re-examination of the evidence once obtained.

[6]  The jury very quickly rejected the EEOC's claim that Ms. Kelley had a disability, because there was no actual evidence that she did.

party certifies that "to the best of the person's knowledge, information, and belief, ***formed after an inquiry reasonable under the circumstances*** . . . the factual contentions have evidentiary support or, ***if specifically so identified***, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .." (Emphasis added). Because the EEOC did not qualify any of its allegations in the Complaint as being those for which it would need further investigation or support, its Rule 11 certification was simply untrue. Even if the Court chooses not to exercise its powers *sua sponte* to impose Rule 11 sanctions, the Court should consider the violation of Rule 11's provisions in determining the haphazard nature of the EEOC's investigation, and its intentional lack of due care in bringing the lawsuit. As noted in Phoebe's original brief, the EEOC had more than a year-and-a-half from the time of the receipt of Ms. Kelley's charge of Discrimination to the time of the filing of the lawsuit, and there is no evidence of any investigation into Ms. Kelley's claims during that interim period.

Perhaps the most glaring example of the lack of any real investigation by the EEOC was its failure to obtain Ms. Kelley's pharmacy records. As with her medical records, the EEOC could easily have obtained the pharmacy records by way of a subpoena or via a HIPAA release. The pharmacy records would have evidenced two critical facts. First, there is no way that Ms. Kelley needed weekends off to recover from the anxiety medication, because she was not even obtaining or taking the medication for the last six months of her employment with Phoebe. This should have clearly demonstrated to the EEOC a complete lack of credibility on the part of Ms. Kelley, and that corroborating evidence would be required prior to filing suit. Additionally, the fact she was not taking the medication, although she claimed that she took it daily when she did purchase it, should have alerted the EEOC that her symptoms were not substantially impacting a major life function, because she did not feel the need to purchase and take the medication.

**THERE WAS NEVER ANY EVIDENCE THE TWO-WEEK LEAVE WAS DISABILITY-RELATED, AND NO EVIDENCE THAT THE DECISION-MAKER WAS EVER INFORMED IT WAS**

The EEOC's case ultimately came down to a claim by the EEOC that a two-week leave demanded by Ms. Kelley was a requested accommodation for her alleged disability, i.e., anxiety. Pretermitting the jury finding that Ms. Kelley's anxiety did not constitute a disability, there was never at any time any credible evidence linking the two-week leave to Ms. Kelley's anxiety or any other disability. In any event, Ms. Kelley testified that the <u>only</u> thing she did with respect to putting anyone at Phoebe on notice of the requested two-week leave was to turn in to Brenda Johnson in Human Resources and to her supervisor, Carol Pressley, a copy of the note[7] requesting to be off. Excerpt of Jury Trial testimony of Wendy Kelley, Vol. I of II, p. 53. As noted by EEOC counsel's question, and Ms. Kelley's reply, there was nothing in the note indicating the reason for the requested leave:

> Q.   What was the medical condition you were asking for two weeks leave for?
> A.   Anxiety.
> Q.   **It doesn't say that on this document, though, correct?**
> A.   **Correct.**

*Id.*[8] Ms. Kelley then admits that other than turning in the note that said nothing whatsoever about

---

[7] Plaintiff's Trial Exhibit #7.

[8] The EEOC's contention that "Defendant would have the Court ignore [Carla] Johnson's sworn testimony both in her deposition and at trial that she recommended Kelley take two weeks off in May 2016 for treatment of her anxiety and menopausal symptoms" is unavailing. The EEOC has not presented Ms. Johnson's trial testimony, and Ms. Johnson's deposition testimony stated that the visit preceding the May leave request **"seemed to be more of menopausal from the looks of what was going on there. So when she came in, what was focused on more was her menopausal symptoms. It was just still documenting, in the review of system, about her anxiety, but, basically, she talked more about the menopausal symptoms."** Johnson

7

her anxiety or any other medical condition, she cannot recall doing anything else to alert anyone at Phoebe with respect to the requested leave. *Id.* It is critical to note that there was never any evidence that anyone communicated to the decision-maker, Melissa Hampton, that the requested leave had anything to do with a disability. **The EEOC should have known that from speaking with Ms. Kelley during the EEOC intake process, and the EEOC does not explain why it did not know that crucial information.** That information alone would have precluded the filing of the lawsuit.

### THE EEOC'S SETTLEMENT POLICY FORCES LITIGATION OR CAPITULATION

The EEOC will not allow a party to settle a case unless the party agrees to submit to a consent decree. *See* EEOC Manual, Part 3, IV.A.2.a. ("To ensure effective enforcement of Commission resolutions, the agency's practice is that settlements be in the form of a consent decree.") "Where employers are concerned, however, a consent decree is the bad bet when compared with a standard settlement. A consent decree gives the EEOC far more control in enforcement as against a company than other settlement agreements, and district courts have broad powers to enforce these decrees due to the 'continuing jurisdiction' language present." *The National Law Review*, Vol. XII, No. 353, April 15, 2015. "Once continuing jurisdiction of the decree is locked in, the EEOC has gained a powerful tool, with a far stronger, more efficient and vastly quicker means for enforcing compliance. An employer must then jump through EEOC

---

Deposition, 45:4-20. Again, this would have been clear from a review of Ms. Kelley's medical records. Menopause is not, of course, a disability. *See Sipple v. Crossmark, Inc.*, 2012 WL 2798791, at *5 (E.D. Cal. July 9, 2012); *Saks v. Franklin Covey Co.*, 117 F.Supp.2d 318, 326 (S.D.N.Y. 2000); *Klein v. Florida Dept. Of Children and Families Servs.*, 21 F.Supp.2d 1367, 1372 (S.D.Fla.1998), *aff'd sub nom. Klein v. State of Fla.*, 208 F.3d 1010 (11th Cir. 2000); *McGraw v. Sears, Roebuck & Co.*, 21 F.Supp.2d 1017, 1021 (D.Minn.1998)).

hoops on command for the duration of the consent decree, a position no employer wants to find itself in." *Id.* An additional disincentive for an organization to settle with the EEOC is that the EEOC's "practice is to issue a press release upon settlement" and "[n]either the issuance nor the content of the press release should be the subject of negotiation." EEOC Manual, Part 3, IV.A.2.h.; *see also E.E.O.C. v. West Customer Mgmt. Group, LLC*, 2014 WL 4409920 *4, n.10 (N.D. FL. July 28, 2014). Accordingly, the press releases are written as if the organization is guilty of the charged conduct, regardless of the underlying facts.

Because of the EEOC's insistence upon consent decrees and one-sided press releases, an innocent target of the EEOC's misguided wrath faces two very unpleasant paths: capitulation with the attached stigma and consent decree burdens that will be in place for years, or a very expensive and risky litigation up through trial. An Eleventh Circuit District Court (cited in the EEOC Manual) acknowledged the damage done to EEOC targets as a result of the insistence upon consent decrees and press releases in the EEOC settlements:

> settlement in this case was always doomed by EEOC's insistence upon not just monetary benefit to [claimant], but also a public consent decree. [cit.] As stated by government counsel in this case, once suit is filed, the EEOC will not settle without a public consent decree and press release. One wonders whether others have lost a chance at monetary settlement due to the EEOC's need—and policy— to garner trophies. Such query parallels an observation made by a noted Nobel laureate: "It is indeed probable that more harm and misery have been caused by men determined to use coercion to stamp out a moral evil than by men intent on doing evil." Friedrich A. Hayek, The Constitution of Liberty (1960).

*West. Customer Mgmt. Group*, at *4, n.10. The *Silverman* Court, in an opinion cited in the EEOC Manual for the proposition that government attorneys are held to a higher standard than other

9

attorneys, noted the overwhelming coercion that can be practiced by government agencies in the litigation context:

> "In dealing with the fourth argument raised by the Board, I believe it is necessary to emphasize certain fundamentals which can bear repetition. First, an attorney in the employ of the government is not on the same footing as a private attorney. He or she has the august majesty of the sovereign behind his or her every utterance; the economic power in the hands of some individual government lawyers can wreak total devastation on the average citizen. As a result, the attorney representing the government must be held to a higher standard than that of the ordinary lawyer."

687 F.Supp. at 69-70. *See FERC*, 962 F.2d at 48 ("We find it astonishing that an attorney for a federal administrative agency could so unblushingly deny that a government lawyer has obligations that might sometimes trump the desire to pound an opponent into submission.") The EEOC failed to comply with the standards expected of a reasonable, ordinary attorney, much less the higher standards required of one who wields the power to wreak total devastation upon those who would dare exercise their constitutional rights, and the burden of litigation expenses should be borne by the EEOC, not Phoebe.

## CONCLUSION

Phoebe, a non-profit, struggling hospital, was unfairly targeted by an EEOC lawsuit that was not based upon a reasonable investigation and was brought and maintained in bad faith against the overwhelming weight of the evidence. The plain language of 42 U.S.C. § 12205, and all equitable factors tend strongly in favor of granting Phoebe its attorneys' fees and costs.

Respectfully submitted, this 20th day of December, 2022.

|  | WATSON SPENCE LLP<br>*Attorneys for Defendant* |
|---|---|
| BY: | <u>*/s/ Alfreda L. Sheppard*</u><br>Alfreda L. Sheppard<br>Georgia State Bar No.: 525106<br>Louis E. Hatcher<br>Georgia State Bar No.: 337342<br>Post Office Box 2008<br>Albany, Georgia 31702-2008<br>(229) 436-1545 Telephone<br>(229) 436-6358 Facsimile<br>Asheppard@watsonspence.com<br>Lhatcher@watsonspence.com |

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2022, I electronically filed the foregoing ***Defendant Phoebe Putney Memorial Hospital, Inc.'s Reply Brief in Support of Post-Trial Motion for Costs and Attorneys' Fees*** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all persons duly registered therewith to receive filings in the above styled matter.

                                                    WATSON SPENCE LLP
                                                    *Attorneys for Defendant*

BY:    */s/ Alfreda L. Sheppard*
           Alfreda L. Sheppard
           Georgia State Bar No.: 525106
           Post Office Box 2008
           Albany, Georgia 31702-2008
           (229) 436-1545 Telephone
           (229) 436-6358 Facsimile
           Lhatcher@watsonspence.com